IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER J. SMITH,<br><br>    Plaintiff,<br><br>    v.<br><br>FORD MOTOR COMPANY, et al.,<br><br>    Defendants. | Case No. 19-cv-05170-CRB<br><br>**ORDER GRANTING MOTION TO REMAND** |
| DAVID P. STARCKS, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>FORD MOTOR COMPANY, et al.,<br><br>    Defendants. | Case No. 19-cv-07447-CRB<br><br>**ORDER GRANTING MOTION TO REMAND** |

Plaintiffs Christopher J. Smith and David P. and Quinn N. Starcks, ("the Starcks," collectively "the Plaintiffs") are citizens of California who brought suit for breach of warranty against both Ford Motor Co. ("Ford"), a Delaware Corporation, and the dealerships that each Plaintiff bought his car from, which have their principal places of business in California. Ford removed the case, arguing that the dealerships were fraudulently joined. The Plaintiffs have moved to remand, arguing that the dealerships are not sham defendants. The Defendants have not shown that that it is impossible for Plaintiffs to succeed on their claims against the dealerships. The Dealerships are therefore not sham defendants and the Plaintiffs' motion is granted.

**I. BACKGROUND**

The Starcks, citizens of California, purchased a 2013 Ford Edge in 2012 from Defendant

1 Worthington Ford. Starcks First Amended Compl. ("Starcks FAC") (dkt.13) ¶ 7. The Starcks
2 received a three year/36,000-mile express warranty. Id. ¶ 8. The Starcks allege that within the
3 warranty period the vehicle developed several electrical and mechanical defects that substantially
4 impaired use of the vehicle and required repair. Id. ¶ 9. Starting in 2013, the Starcks brought the
5 vehicle in for repair to a Ford authorized repair facility. Id. ¶ 21. Subsequently, the Starcks
6 brought the vehicle in yearly for repair until the filing of this action for issues such as the car
7 "shuddering on acceleration," "shifting hard between gears," and "jerking on take off and down
8 shifting hard." Id. ¶¶ 19–27.

9 During this period of frequent malfunction, the Starcks allege that the repair center did not
10 explain the issues with the car or detail the repairs made. Id. ¶¶ 21–27. Further, on several
11 occasions the repair center allegedly represented that there was no issue with the transmission, that
12 they had been able to repair the transmission, or that "external factors" were causing the car's
13 issues. Id. ¶¶ 20, 22–23, 36. The Starcks allege that though on one occasion the technician noted
14 in the repair notes that "the transmission requires attention" and to "please see advisor for details,"
15 the repair center still represented at pick-up that it had repaired the vehicle. Id. ¶ 22. The
16 technician also never provided information on repairs done or on the nature of any issue with the
17 transmission. Id. The Starcks also allege that a series of Ford recalls and Technical Service
18 Bulletins further complicated discovery of the transmission issue. Id. ¶ 4. They allege that Ford
19 represented on one occasion that there was a repairable transmission defect causing various
20 symptoms, but on another occasion represented that these symptoms were not the result of a
21 transmission defect. Id. ¶ 17. Finally, the Starcks allege that in May of 2019 they called Ford
22 seeking replacement of the vehicle "shortly after becoming suspicious of Defendants' concealment
23 of the Transmission Defect." Id. ¶ 37. A Ford representative told the Starcks that Ford would not
24 be able to replace the vehicle. Id.

25 That same year, Smith, also a citizen of California, purchased a 2011 Ford Fusion from
26 Defendant Future Ford which came with the same warranty as the Starcks' vehicle. Smith Compl.
27 (dkt. 1-1) ¶¶ 8–9. Like the Starcks, Smith alleges that the vehicle developed defects that
28 substantially impaired his ability to use it. Id. Unlike the Starcks, Smith does not provide an

2

accounting of the car's repair history. In their Opposition, the Defendants point to a repair history that began in 2013. Opp'n to Smith (dkt. 20) at 9. Both the Starcks and Smith allege that the Defendants failed to repair the vehicle, replace the vehicle, or provide restitution for these defects. Smith Compl. ¶ 12; Starcks FAC ¶ 40.

The Plaintiffs filed suit in 2019 in Santa Clara Superior Court against both Ford Motor Co. ("Ford") and the Ford dealerships. Smith Compl. ¶¶ 4–5; Starcks FAC ¶¶ 4–5. Against Ford the Plaintiffs alleged various violations of California's Song-Beverly Consumer Warranty Act. Smith Compl. ¶¶ 8–28; Starcks FAC ¶¶ 39–53. But against the dealerships the Plaintiffs alleged only a breach of the Song-Beverly Act's implied warranty of merchantability. Smith Compl. ¶¶ 29–33; Starcks FAC ¶¶ 58–62.

In both cases, the Defendants removed the case to this Court, asserting that diversity jurisdiction exists because the dealerships, though California citizens, were fraudulently joined. Starcks Removal (dkt. 1) ¶¶ 20–21; Smith Removal (dkt. 1) ¶¶ 20– 21. The Plaintiffs then filed Motions to Remand arguing that the dealerships are not fraudulently joined and that several doctrines toll the statute of limitations on their implied warranty claim. Starcks MTR (dkt. 15-1) at 6–13; Smith MTR (dkt. 16-1) at 6–13.

## II. LEGAL STANDARD

Federal courts have limited jurisdiction. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). A defendant has the burden of proving that the requisite jurisdiction exists to support removal. Gaus v. Miles, 980 F.2d 564, 566 (9th Cir.1992). Diversity jurisdiction requires complete diversity of citizenship and an amount in controversy that exceeds $75,000. 28 U.S.C.§ 1332. However, fraudulently joined defendants will not defeat removal on diversity grounds. Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998).

There is a general presumption against fraudulent joinder. Hamilton Materials, Inc. v. Dow Chemical Corp., 494 F.3d 1203, 1206 (9th Cir. 2007). Courts are to "resolve all disputed questions of fact . . . in favor of the non-removing party," and "all doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand." Plute v. Roadway Package Sys., 141 F. Supp. 2d 1005,

1008 (N.D. Cal. 2001) (internal citations omitted).

The joinder of a nondiverse defendant is fraudulent and thus does not defeat diversity if "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987). A defendant must show "that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant." Good v. Prudential Ins. Co., 5 F. Supp. 2d 804, 807 (N. D. Cal. 1998) (emphasis added). See also Ritchey, 139 F.3d at 1318 (focus of McCabe was whether a cause of action could be stated); Kruso v. Int'l Telephone & Telegraph Corp., 872 F.2d 1416, 1427 (9th Cir. 1989) ("plaintiffs are unable to state a claim against Defendants for any of the wrongs alleged in their complaint").

## III. DISCUSSION

Defendants argue that the dealerships are fraudulently joined because the statute of limitations has run on the Plaintiffs' only claim against the dealerships, for a violation of the implied warranty of merchantability. Plaintiffs respond that several tolling theories apply, so success on this claim is possible. The Defendants argue in the alternative that this Court should use its discretion under Rule 21 to drop the dealerships as parties. The Court accepts the Plaintiffs' argument that the "delayed discovery" tolling doctrine could apply and rejects the Defendants' argument to sever the dealerships under Rule 21.[1]

### A. Fraudulent Joinder and Application of Tolling Doctrines

The Song-Beverly Act states that "every sale of consumer goods that are sold at retail in [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. The Act provides that the duration of the implied warranty is the same as the duration of any express warranties, except that no matter how long the express warranty is, the implied warranty can be no longer than one year. Id. § 1791.1(c). Here, both the Plaintiffs and the Defendants appear to agree that because both cars

---

[1] Because the Court finds that the Plaintiffs could succeed on a "delayed discovery" tolling theory, the Court does not consider the other tolling theories Plaintiffs have alleged or the issue of amount in controversy.

4

had a three-year express warranty, the implied warranty ran for the statutory maximum of one year. Opp'n to Starcks at 4; Starcks MTR at 9. But the Defendants contend that even if the implied warranty lasts one year, the cause of action for violating that warranty accrues at delivery. Opp'n to Starcks at 4; Opp'n to Smith 4–5.

Because the Song-Beverly Act does not contain a statute of limitations, California courts have applied the statute of limitations from section 2725 of the California Commercial Code. Mexia v. Rinker Boat Co., Inc., 174 Cal. App. 4th 1297, 1305–06 (2009).

Section 2725 provides:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to delayed discovery of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Cal. Com. Code § 2725(1)–(2). The Defendants argue that the Plaintiffs claims are obviously time-barred because "the implied warranty statute of limitations ran four years after the sale of the vehicle, i.e. in June 2016." Opp'n to Starcks at 6. Both Plaintiffs filed their actions in 2019.

### 1. Delayed discovery

The Plaintiffs argue the "delayed discovery" or "future performance" exception of § 2725 applies. Section 2725 provides that "where a warranty explicitly extends to the future performance of goods, and discovery of the breach must await the time of such performance, the cause of action accrues when breach is or should have been discovered." Cal. Civ. Code § 2725(2).

Two conditions must be met for this doctrine to apply. Mexia, 234 Cal. App. 3d at 1304–06. First, there must be a latent defect in the product that the buyer could not reasonably discover at sale. Id. at 1304–05. Second, there must be a warranty which "extends to the future performance of . . . goods." Id. at 1306. The delayed discovery exception cannot apply to claims

5

based on a warranty that can only be breached at the time of delivery. Id. at 1309. On the other hand, when a "warranty has a . . . prospective existence beyond the time of delivery," California courts have held it may be breached after delivery and so the delayed discovery exception may apply. Id.

Here, the Plaintiffs have met the first condition through their pleadings, which do not foreclose the possibility that a latent defect existed at the time of sale. The second condition requires more analysis. Ultimately it appears that California law does not bar the theory that the Song-Beverly Act's implied warranty of merchantability extends to the future performance of goods.

### a. Latent Defect

First, because the Defendants have not shown that it will be impossible for the Plaintiffs to show a latent defect, their arguments must fail. McCabe, 811 F.2d at 1339. The Starcks' allege that they knew about the symptoms of the car's unknown problem shortly after purchasing the car but did not know that a transmission defect was causing these symptoms until shortly before filing this action. FAC ¶¶ 14–30. The breach of the implied warranty, they seem to allege, happened in 2019 when they became suspicious that Ford was concealing the true cause of the car's issues, called Ford, and Ford told them it would not replace the vehicle. Id. ¶ 37. Further, the Starcks seem to allege that even if they suspected before 2019 that there was an issue with the transmission, the Defendants repeatedly disclaimed any issue with the transmission or claimed to have fixed the issue. Id. While the Starcks may not ultimately succeed on a "delayed discovery" theory, they only need to show that success is possible. See Good, 5 F. Supp. 2d at 807. The Starcks have identified a latent defect— the transmission defect— and they have alleged a delay in discovery because of the Defendants' representations. FAC ¶¶ 14–30. The burden is thus on the Defendants to prove that the law obviously forecloses this theory.

At oral argument defense counsel argued that the problems with the car were patent and that any knowledge of a patent defect forecloses success on a "delayed discovery" theory. There is no such rule. Defendants point to no authority that earlier knowledge of an issue with the car

squarely forecloses a "delayed discovery" theory. Opp'n to Starcks at 9. The Starcks, in turn, point to cases in which courts have found success on "delayed discovery" theories to be possible despite a plaintiff's previous knowledge of the symptoms of hidden product defects. For example, in Mexia the Plaintiff repeatedly brought a boat in for repairs because of a recurring engine issue. 174 Cal. App. 4th at 1302. Despite the fact that Mexia was certainly aware of the performance issues caused by the engine problem, the court found that he was not put on notice of the defect until he later discovered that the Defendants "were unable or unwilling to make the [boat] conform to the applicable warranties." Id.; See also Audo v. Ford Motor Co., No. 3:18-cv-00320-L-KSC, 2018 WL 3323244, at *2 (S.D. Cal. July 6, 2018) (finding "plausible" a plaintiff's "delayed discovery" theory where plaintiffs spent two years trying to get the car repaired and the dealership did not provide details about the "nature of the defects or the fact that they were unwilling or unable to cure them"); Chipley v. Ford Motor Co., No. 18-cv-01161-YGR, 2018 WL 1965029, at *1,3 (N.D. Cal. Apr. 26, 2018) (finding success on a "delayed discovery" theory to be possible where the repair center was "unable to service or repair the vehicle after a reasonable number of opportunities"). Here too, the Starcks' pleadings indicate that, despite recurring issues with the car, they did not discover the transmission defect until Ford told them in 2019 that Ford would not be able to repair the car. Starcks FAC ¶ 37. Thus, the Court finds that knowledge of previous defects does not bar the Starcks' success on a "delayed discovery" theory.

Defense counsel further argued that Plaintiffs' allegations that "at the time of purchase . . . the existence of each of these defects constitutes a breach," is an admission that the breach happened at the time of delivery. Starcks FAC ¶ 61; Smith Compl. ¶ 32. Not so. The "delayed discovery" theory is premised on the assumption that though the defect existed at delivery, the breach does not happen until Plaintiff becomes aware of the defect. Mexia, 174 Cal. App. 4th at 1304 ("[I]n order to prove a breach of the implied warranty, the purchaser was required to show that the defect existed at the time the product was sold or delivered."). Plaintiffs' admission that the defect existed at delivery therefore does not facially bar success on a "delayed discovery" theory. Further, even if these allegations can be interpreted as such an admission, the Court is required to resolve all ambiguities in favor of the Plaintiffs. Plute v. Roadway Package Sys., 141

7

F. Supp. 2d at 1008.

Smith's complaint is less detailed than the Starcks and does not provide details about the repair history or explicitly discuss any latent defect. But the defendants have not met their burden to show that success on a latent defect claim is impossible. See Good, 5 F. Supp. 2d at 807. The Defendants have pointed to no facts in Smith's pleadings that foreclose him from proceeding on a latent defect theory and the facts that Smith has plead are consistent with a latent defect. Smith Compl. ¶ 10.

### b. Extension of the Implied Warranty of Merchantability to the Future Performance of Goods

Defendants argue that California law precludes application of the "delayed discovery" exception to implied warranty claims. Opp'n to Starcks at 8–9 ; Opp'n to Smith at 8–9. They rely on Cardinal Health 301, Inc v. Tyco Elecs. Corp., which held that "[b]ecause an implied warranty is one that arises by operation of law rather than by an express agreement of the parties, . . . it is not a warranty that explicitly extends to future performance of the goods." Cardinal Health 301, Inc v. Tyco Elecs. Corp. 169 Cal. App. 4th 116, 134 (2008) (internal quotations omitted). Defendants argue that Cardinal Health foreclosed the possibility that any implicit warranty extends to the future performance of goods, and therefore resolved any ambiguity as to whether the "delayed discovery" exception can apply to implicit warranties. Opp'n to Starcks at 8–9; Opp'n to Smith at 8–9. One court in this district has agreed with the Defendants' theory that the "delayed discovery" exception is inapplicable to implied warranties. Covarrubias v. Ford Motor Co., No. 19-cv-01832-EMC, 2019 WL 2866046, at *4 (N.D. Cal. July 3, 2019).

In contrast, the majority of courts that have considered this issue in factually-identical Ford cases have found that the implied warranties at issue could extend to the future performance of goods and thus that California law does not "obviously foreclose" the application of the "delayed discovery" theory in this case. See Yaeger v. Ford Motor Co., No. C 19-06750-WHA, 2020 WL 95645, at *4 (N.D. Cal. Jan. 8, 2020); Deutsch v. Ford Motor Co., No. 19-cv-01388-YGR, 2019 WL 2076713, at *3 (N.D. Cal. May 10, 2019).

Yaeger provides an instructive example. Yaeger noted that in Mexia the California Court of Appeals explicitly held that "the implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale." Yaeger, 2020 WL 95645, at *4. (citing Mexia, 174 Cal. App. 4th at 1308). This was because the Song-Beverly Act provides a maximum duration for implied warranties, "creat[ing] the possibility" that those warranties apply to the future performance of goods. Id. at *2 (quoting Mexia, 174 Cal. App. 4th at 1309) (internal quotations omitted). Yaeger distinguished Cardinal Health on the grounds that it "arose in the context of the commercial code," not the Song-Beverly Act. Id. at *3–4. This distinction mattered because the Commercial Code gave no express duration to the implied warranty of merchantability. Id. Therefore, implied warranties under the Commercial Code can only be breached at delivery and do not extend to the future performance of goods. Id. at *3–4 (citing Mexia,174 Cal. App. 4th at 1304). Since Cardinal Health did not consider the Song-Beverly Act, Yaeger found that the binding California authority was Mexia and that under California law Song-Beverly Act implied warranties extend into the future. Id. at *3–4.

Yaeger also noted Ninth Circuit precedent that directs federal courts to follow Mexia. Id. at *3 (citing Daniel v. Ford Motor Co., 806 F. 3d 1217 (9th Cir. 2015)). Daniel held that despite federal courts' "mixed treatment" of Mexia "we must adhere to state court decisions—not federal court decisions—as the authoritative interpretation of state law." Daniel, 806 F. 3d at 1223.

The Court finds Yaeger persuasive because it acknowledges the distinction between implied warranties within the Commercial Code and the Song-Beverly Act. That distinction may allow Song-Beverly Act warranties to extend to the future performance of goods, meaning that the delayed discovery doctrine could apply here. Further, because the standard for fraudulent joinder requires that there is "no possibility" of success on a claim, relying on Cardinal Health alone, without distinguishing possibly conflicting authority, is not sufficient to justify remand. Good, 5 F. Supp. 2d at 807. Thus, the Defendants have not met their burden to show that it is impossible under California law for the Plaintiffs' claims against the dealerships to succeed. Id.

9

### B. Rule 21

The Court declines to use its discretion under Rule 21 to drop the dealerships. A district court may use its discretion under Rule 21 to drop a dispensable party in order to perfect diversity. See Sams v. Beach Aircraft Corp., 625 F. 2d 273, 277 (9th Cir. 1980); Fed. R. Civ. P. 21. Many courts that have considered this issue in factually similar Ford cases have declined to exercise this discretion. See Sams, 625 F. 2d at 277 (declining to sever the dealerships because the resolution of the claims against the dealership would involve the same evidence and witnesses as the resolution of the claims against the manufacturer); Sabicer v. Ford Motor Co., 362 F. Supp. 3d 837, 841 (C.D. Cal. 2019) (declining to sever the dealership because "the claims of both Ford and [the dealership] are sufficiently intertwined, factually and legally, that severance would be inconvenient and inefficient"). The Defendants' only support for their argument is an order from Judge Birotte in which the court accepted a Rule 21 Argument. Opp'n to Starcks at 13 (citing Order No. 2: Denying Test Motions for Remand at 10–12, 16, In re: Ford Motor C. DPS6 Powershift Transmission Products Liability Litigation, No. 18-ML-02814(FFMx) (N.D. Cal. Sep. 10, 2018)). Judge Birotte, however, found that the defendants had met their burden for fraudulent joinder and then "in light of . . . [that] analysis" found that exercising Rule 21 discretion was appropriate. Order No. 2: Denying Test Motions for Remand at 16, In re: Ford Motor C. DPS6 Powershift Transmission Products Liability Litigation, No. 18-ML-02814 (FFMx) (N.D. Cal. Sep. 10, 2018). Here, in contrast, the Court finds no fraudulent joinder, so Judge Birotte's order is distinguishable. Having found proper joinder, the Court declines to exercise its Rule 21 discretion here.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motions to Remand is granted.

**IT IS SO ORDERED.**

Dated: February 4, 2020

CHARLES R. BREYER
United States District Judge